SUPERIOR COURT 
 
 ROBERT DASTOU vs. KATHRYN HOLMES

 
 Docket:
 2381CV02212
 
 
 Dates:
 -
 
 
 Present:
 Keren Goldenberg
 
 
 County:
 MIDDLESEX
 

 
 Keywords:
 FINDINGS, RULINGS, AND ORDER IMPOSING SANCTIONS
 
 

             The Court held a hearing to address the suspected misuse of generative artificial intelligence by an attorney in court filings. In reviewing motions in limine and proposed jury instructions filed by Defendant's counsel, I identified citations to cases that do not exist, a quotation attributed to a real case that was not contained in the opinion, and misstatements·as to the holding of real cases. One proposed jury instruction introduced what sounded like a legitimate legal concept, but that concept was fictitious. .
            The underlying case involved breach of contract and conversion claims against the defendant who, while moving out of the apartment that she had shared with the plaintiff after a difficult break-up, took possession of their dog and denied the plaintiff access to the dog. A jury trial was held, and the jury found for the plaintiff on his claims and for the defendant on one counterclaim. Ultimately, the dog was awarded to the defendant.
            Generative AI presents significant risks in legal writing. Of concern is the potential for AI to generate fabricated legal authorities, including non-existent cases and statutes. These fictitious legal authorities are called "hallucinations," because the language model produces content that is fictitious but presented as it if it were true.[1] This occurs because generative AI models are trained to predict the most likely next word in a sequence based on patterns in massive text datasets. Even when referencing real case law, generative AI lacks the ability to perform nuanced legal reasoning which may result in misinterpreting case law.
            Lawyers have a duty to provide competent representation of their clients and demonstrate candor towards the tribunal. Mass. R. Prof. Conduct 1.1 & 3.3. This extends to submitting filings
 
--------------------------------------------
 
[1] Fictitious quotes are another example of a hallucination.
 
                                                            -1-
 
that accurately state the law and present arguments that supports their clients' interests. By submitting motions and briefs that contain hallucinations and misstatements of the law, the lawyer violates their professional obligations. If a lawyer uses generative technology, they may not blame errors in their work product on the technology. Any document filed with the court must be thoroughly reviewed to ensure accuracy and the protection of client interests.
            I credit that this was the first time that the attorney had used generative AI and that she was, and still is, confused by the technology. She was not aware that generative AI can produce hallucinations. She explained that she has a bank of motions in limine that she uses in trial matters, both civil and criminal, and that she had used ChatGPT to check spelling, grammar, and to format her motions.[2] [3] She explained that she was not aware that ChatGPT had altered her motions beyond spelling, grammar, and formatting.
            As to the confounding jury instruction, the attorney claimed that it was a model instruction that she found on Westlaw and promised to produce it for the court. The proposed instruction looked like a model instruction in its structure and its use of footnotes for citing case law, and due to its seeming legitimacy, I wasted time mid-trial looking for the origin of this instruction to no avail. Counsel did not produce the model instruction and instead explained in an affidavit that she had taken the superior court's model jury instructions and "put them into ChatGPT for formatting." The result was an instruction that referenced a fictitious legal concept and included a footnote with both a fictious case and a real case that did not support the concept. Counsel attempted to explain that the real case indirectly supported the premise of her proposed jury instruction, which it did not.
            The hallucinations contained in the pleadings (fictitious citations and quotations) are obvious results of generative Al. As to the misstatements of holdings in real cases, it is difficult for me to discern whether the inadequacies are the result of poor case analysis or the misuse of generative AL Misuse of generative AI is sanctionable; poor drafting is not.
            I appreciate Counsel's contrition regarding her use of generative AI and her sincere apology to the Court. I appreciate that she admitted to using the tool, although it was clearly used for more than spelling, grammar, and formatting. I credit that she has learned from her error and
 
--------------------------------------------
 
[2] Counsel did not create an account with ChatGPT prior to using it, which would have maintained a history of inquiries.
[3] I noticed an assortment of citations to both criminal and civil cases in motions on this civil matter.
 
                                                            -2-
 
believe her when she said that she will not use generative AI again in her filings. Unprompted, Counsel proposed and implemented an appropriate sanction: she did not bill her client for her work on the motions in limine and jury instructions and for her time in court arguing those motions. Notwithstanding the poor quality of the motions, her client did not fare worse at trial because of the motions. The motions did not have an impact on the defendant's outcome at trial.
            As an additional sanction, I am ordering Defendant's counsel to complete a CLE course offered by MCLE titled: How to Draft Civil Jury Instructions When a Model One Does Not Exist: The 60-Minute Lawyer.[4] The program is an on-demand webcast and Counsel has six months to submit a sworn statement to the court verifying completion' of the program.
            Overreliance on AI risks deskilling legal practitioners, especially attorneys who need to develop critical thinking and legal writing skills. Given these dangers, any use of generative AI in legal work must be approached with caution and careful supervision. Lawyers who assume the risk of using generative AI must establish a thorough review process to ensure accuracy, ethical compliance, and protection of client interests.
ORDER
For the reasons stated, it is hereby ORDERED that Defendant's Counsel:
1. Is enjoined from billing Defendant for time spent preparing motions in limine and jury instructions for this matter and for time in court litigating these motions; and
2. Shall complete MCLE's online program, "How to Draft Civil Jury Instructions When a Model One Does Not Exist: The 60-Minute Lawyer," and submit a sworn statement to the Clerk of Court affirming its completion no later than six months from the date that this order issues.
/s/Keren Goldenberg
Justice of the Superior Court
 
--------------------------------------------
 
[4] https://www.mcle.org/product/catalog/code/2200324WBA